THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEE ARTHUR SMITH, Defendant-Appellant.

Third District   Nos. 77-393, 78-68 cons.

Opinion filed December 20, 1978.

Robert Agostinelli and Verlin R. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (James E. Hinterlong and Joseph A. Mueller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This consolidated appeal by defendant Lee Arthur Smith was made from convictions of robbery and intimidation entered in the Circuit Court of Kankakee County after jury trials of the cases. In case No. 77-393, which involved the Montgomery Ward store in Kankakee, defendant was sentenced to six to 20 years on a conviction for robbery and to a concurrent sentence of three to 10 years on the intimidation conviction. In case No. 78-68, involving the K-Mart store in Kankakee, defendant was sentenced to 6 2/3 to 20 years on the robbery conviction and to a concurrent term of 3 1/3 to 10 years on the intimidation conviction. In the second case, No. 78-68 (involving the K-Mart store), the trial judge directed that the sentences entered in that case were to be served consecutively to the sentences entered in No. 77-393 (involving the Montgomery Ward store). See Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4.

There are two issues which are common to both appeals and which formed the basis for this consolidation on appeal. In both of the cases, the defense argued that the evidence presented was not sufficient to support the conviction for robbery. It is argued that there was no taking from the person or presence of the victim since (it is contended) there was no threat of imminent harm. As a second issue, the defendant also argues, in both instances, that intimidation is a lesser included offense of robbery, and that, in the event the robbery convictions were affirmed, the intimidation convictions should be vacated.

The record in 78-68 discloses that in the early afternoon of October

16, 1976, defendant Smith telephoned the manager of the K-Mart store in Kankakee. Defendant informed the manager that bombs had been planted in the store and that the bombs would be detonated in 12 minutes unless the manager put $10,000 in a bag and delivered the bag with the money to a phone booth at a nearby service station. Smith was apparently calling from the phone booth at that time. The manager then gathered $4,500, which was all he could then raise, and placed it in a bag. He took it to the designated nearby phone booth and placed it there. He left after depositing the bag in the booth. A security guard kept watch on the phone booth and saw a man, later identified as the defendant, pick up the bag a short while thereafter, who walked away with the bag. In the pursuit which followed, the guard lost sight of the man and the police, who were then notified, were unable to locate him. The defendant was apprehended a week later, after the incidents involved in the Montgomery Ward case.

In 77-393, it was shown that defendant phoned the manager of the local Montgomery Ward store in Kankakee in the early afternoon of October 23, 1976. Defendant informed the manager that bombs had been planted in the store and defendant said that he would detonate the bombs within six minutes unless the manager delivered $10,000 in cash to a specified nearby location. Defendant was apparently making the call from a tavern near the specified dropoff point. Defendant also indicated in the phone conversation that he would detonate the bombs if police were called or if the store was evacuated. The manager immediately notified police who then arranged for a delivery of paper, instead of cash, in a store money bag. They also set up surveillance around the drop-off point. The manager walked to the specified location and there placed the bag in the grass off the sidewalk as he had been directed. The manager then returned to the store which had been evacuated. A short time later, police officers at the drop-off scene, observed defendant arrive in an automobile, get out of the car and then proceed to the area where the bag was located. Defendant walked back and forth, always checking in both directions in the general vicinity and, finally, he picked up the bag. He was arrested at that time by the police.

The first issue which is common to both cases on appeal is whether the evidence was sufficient to sustain a conviction for robbery. Robbery is defined in section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—1) as follows:

"(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

(b) Sentence. Robbery is a Class 2 felony."

The defense contends that the facts of the two cases do not establish a taking from the person or presence of the managers and that the facts do not show threats of imminent use of force. The defense argues that the offenses committed by the defendant were theft only and attempted theft (Ill. Rev. Stat. 1975, ch. 38, pars. 16—1, 8—4). We do not believe that this position is sound.

■■ ■ As stated in *People v. Patton* (3d Dist. 1978), 60 Ill. App. 3d 456, 459, 376 N.E.2d 1099:

> "The gist of that offense [robbery] is the force and intimidation used in the taking from the person against his will [citation]; and the degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will." (*People v. Williams*, 23 Ill. 2d 295, 178 N.E.2d 372 (1961).)

It has been established that the cause which gives rise to the fear need not be contemporaneous with the taking but may precede it. (*People v. Stewart* (1st Dist. 1977), 54 Ill. App. 3d 76, 80, 369 N.E.2d 131.) As also noted in *People v. Howell* (4th Dist. 1973), 11 Ill. App. 3d 391, 393, 296 N.E.2d 760, it is the element of force or intimidation, and the resulting fear in the person assaulted or threatened, which makes the difference between robbery and theft. The threat made to the managers in these two cases was to detonate a number of bombs in their stores within minutes (six minutes in one case and 12 minutes in the other), if defendant's instructions were not complied with by the managers. The circumstance that the threat came over the telephone did not reduce the resulting fear produced or the element of personal confrontation involved.

■■■ With the designation of nearby drop-off points, the store managers had every reason to believe that the caller was in the nearby area and would detonate the bombs. In one case, the caller threatened to detonate the bombs if the store was evacuated. The fear which resulted from these threats obviously began at the moment they were received over the telephone and in all probability did not abate until after the stores had been thoroughly searched by police experts. Statements made over the telephone to the store managers, that the bombs were in the stores and would be detonated within a matter of a few minutes, were threats of the imminent use of force. (*People v. Stewart* (1st Dist. 1977), 54 Ill. App. 3d 76, 369 N.E.2d 131.) As a result of the fear engendered by such threats, the managers were directed, against the wills of the managers, to part with property in possession of the managers and belonging to the respective stores. The evidence in both cases demonstrates that property was to be taken from the managers by the threat of great violence. The evidence

was, therefore, sufficient to sustain the robbery convictions entered by the circuit courts.

■■ Defense argues that the convictions should not be sustained since there was no taking from the person or presence of the store managers. In *People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55, the Illinois Supreme Court recognized that a taking of property constituting a robbery could be accomplished without that taking occurring in the actual or immediate presence of the owner or custodian. In *Braverman,* the robbers took money from a safe while the victims of the robbery were in another room. In the instant case, the defendant, calling from nearby points in each case, made threats of great and imminent harm unless money was delivered to specified, certain nearby locations. When confronted with these threats of force, the managers walked to the drop-off points specified by the defendant and there parted with possession and control over certain property. At the time the managers gave up possession of the property under threat of violence, they had no way of knowing where the defendant was, and they had good reason to fear and believe he was in the immediate area. In the Montgomery Ward situation, there was testimony that indicated that defendant watched from a nearby tavern as the money bag, presumed to be full of money, was delivered. Obviously, the taking from the person or presence of the store managers occurred at the time the managers gave up control over the property at the drop-off point designated by the caller. There was, therefore, as much of a taking, under threat of force, at that time as there would have been had the robber been hiding in nearby shrubbery or waiting next to the phone booth.

In *Brinkley v. United States* (8th Cir. 1976), 560 F.2d 871, *cert. denied* (1977), ___ U.S. ___, ___ L. Ed. 2d ___, 98 S. Ct. 435, where the Circuit Court of Appeals was faced with a similar factual situation and a similar issue, a bank manager, under threats of violence made over the telephone, followed instructions to throw a bag of money out of the window of his automobile at a designated spot. In a prosecution under the Federal bank robbery statute (18 U.S.C.A. §2113 (1977 Supp.)), which requires a taking from the person or presence, the court found that through intimidation and fear the bank manager was forced to comply with the demands of the extortionists. The court also found that when the manager lost possession and control, at the point specified by the defendants, there was a taking from his person, since the robbers there had an opportunity to pick up the money or property brought by the manager, and that defendants intended to do so. We believe that similar considerations justify the conviction for robbery in the instant cases.

The defense argues that a contrary result to the *Brinkley* case was

reached in *United States v. Culbert* (9th Cir. 1977), 548 F.2d 1355, *rev'd on other grounds* (1978), 435 U.S. 371, 55 L. Ed. 2d 349, 98 S. Ct. 1112. In *Culbert*, however, the prosecution on appeal conceded that the facts did not warrant the robbery conviction. We note, also, that the Solicitor General did not approve of that concession, and, as noted in the Supreme Court opinion, that concession did not represent the position of the Department of Justice. The evidence in both of the cases under consideration by this court was sufficient to sustain convictions for robbery under section 18—1 (Ill. Rev. Stat. 1975, ch. 38, par. 18—1).

■■ A second issue raised by defense in both cases, is the contention that intimidation is a lesser included offense of robbery. As stated in section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 2—9):

" 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein."

Under the robbery statute which we have set out previously, it is clear that robbery was proven by evidence which established a taking by the defendant through the threat of force. The facts indicated that the defendant used the threat of violence to coerce the managers into compliance with his demands. Those same facts also established the offense of intimidation (*People v. Smalley* (1st Dist. 1976), 43 Ill. App. 3d 600, 357 N.E.2d 93), which is defined as follows in the Code:

"A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:

(1) Inflict physical harm on the person threatened or any other person or on property; or

\* \* \*

(3) Commit any criminal offense; or \* \* \*." Ill. Rev. Stat. 1975, ch. 38, par. 12—6.

When the defendant, intending to coerce the managers to comply with his demands, communicated the threats to them, he committed the offense of intimidation. When the managers, under the threat and against their will, gave up possession and control of the property, robbery was also established. Thus, in these cases, less than all of the facts which established the robberies, were sufficient to establish intimidation. By the terms of section 2—9, therefore, the intimidation was a lesser included

offense of robbery in these cases. In *People v. Smalley* the court found that intimidation was a lesser included offense of rape, since proof of rape, inherent in which is a threat to use force to get another to perform sexual intercourse, would also be sufficient to prove intimidation. The *Smalley* court concluded that the elements of intimidation were included within the offense of rape. Similarly, in the instant case, proof of the robbery was sufficient to prove intimidation and the elements of the intimidation charge were included in the facts showing the robbery.

The State relies heavily on *People v. Stewart* (1st Dist. 1977), 54 Ill. App. 3d 76, 81, 369 N.E.2d 131, for the proposition that intimidation is not a lesser included offense of robbery. We believe that such reliance is misplaced. It is first apparent that no issue concerning the relationship between robbery and intimidation was before the court in *Stewart*. The facts which established the intimidation convictions are nowhere set out in that opinion, since those convictions were not before the court on review. (*People v. Stewart* (1st Dist. 1977), 54 Ill. App. 3d 76, 81.) Accordingly, the court's comments to the effect that intimidation is not a lesser included offense of armed robbery are clearly *dicta*. In addition, while the elements of proof for each crime may have varied in that case, in the instant cases the same proof which established part of the offense of robbery, also established the offense of intimidation. In *People v. Williams* (1975), 60 Ill. 2d 1, 13, 322 N.E.2d 819, the supreme court reiterated the rule "that a person may not be convicted of multiple offenses arising out of the same act or the same conduct and that only the judgment and sentence of the most serious of the offenses may stand." In these cases, the same conduct of defendant gave rise to multiple convictions for robbery and intimidation. Here, intimidation is a lesser included offense of the robbery upon the facts as established in the instant cases. Accordingly, only the judgment and sentence for robbery offenses may stand, but the intimidation convictions are required to be vacated when the robbery convictions stand.

A contention is made by defendant that statements of defendant were used as substantive proof of guilt even though the statement-taking officers did not clearly indicate that defendant was properly advised of his rights prior to making the statements. In the instant case, Officer Hanson testified that defendant was, in fact, given his rights and that the warnings which were given were commonly referred to as *Miranda* rights and were read to the defendant from a standard form card containing *Miranda* warnings. The prosecution, in fact, has also pointed out that defendant waived any objection to the use of the statements made by the police officer Williams, by the failure of defendant to challenge the use of the statements in his pretrial motion to suppress, and his failure to object to the testimony at the trial. Defendant's contention is raised for the first

time on appeal. Even assuming that the issue was not waived, the testimony of the officers in the record was sufficient to prove that the defendant was properly advised of his rights.

Another issue which was raised in case No. 77-393 (the Montgomery Ward case) concerns the refusal of the court to allow a defense witness to testify in order to attack the credibility of a prosecution witness. The State called Glenn Dickerson in its case in chief. Dickerson had been incarcerated with the defendant Lee Smith in the county jail. Dickerson testified that while he was there, he was approached by Smith who offered him $10,000 if he (Dickerson) would take the defendant's two charges. According to Dickerson, Smith then wrote a confession for Dickerson, which Dickerson recopied and signed. Dickerson later retracted the confession. Thereafter, the defense proposed to call Randy Wicks as a witness. On the basis of an offer of proof, it appeared that Wicks would have testified that Dickerson had discussed the Smith case with him, and that Dickerson informed him that the State offered him a deal if he would recant his signed confession and testify against Smith. The court did not allow Wicks to testify, and found that a proper foundation for such impeachment had not been laid by the defense. The defense had questioned Dickerson, who stated he had not talked with Wicks while in the county jail. The defense did not direct Dickerson's attention to the substance of the allegedly inconsistent statement nor did it specify the time and place where the statement was allegedly made.

■■ A foundation for impeachment by prior inconsistent statements is established by directing the attention of the witness to the time and place of, and circumstances surrounding, the making of the inconsistent statement, as well as by directing his attention to the substance of the inconsistent statement. (*People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1; *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865.) The purpose of requiring such specification in laying a foundation is to protect a witness from unfair surprise and to give him an opportunity to explain the statement with which he is confronted. *People v. Henry* (1970), 47 Ill. 2d 312, 321, 265 N.E.2d 876.

■■ In the instant case there were no questions so directing Dickerson's attention to the specific time and place of the alleged statement or to the substance of that statement. While the formal requirements for laying foundations may be relaxed in certain circumstances, it is only where the purposes of the requirements have been satisfied by the foundation which was laid, that the formal requirements are relaxed. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) The foundation laid by the defense in the instant case was too general in nature and did not adequately apprise the witnesses of the alleged inconsistent prior statement. Since he was not made aware of the statement, the witness had no opportunity to

explain it and its introduction would have subjected him to unfair surprise. The foundation laid by the defense in this case did not substantially satisfy the reasons for the rule. We, therefore, find no error in the court's decision to exclude the testimony of defense witness Wicks.

■■ The final issue, which was raised in case No. 78-68 (K-Mart case), is whether the trial court abused its discretion in ordering that the sentences imposed in case 78-68, and designed to run consecutively with those imposed in 77-393, constituted an abuse of discretion of the trial court. Section 5—8—4(a) gives the court discretion to impose consecutive sentences "when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a).) By reason of defendant's conviction in 77-393 (the Montgomery Ward case), the court had discretion to impose consecutive sentences when it sentenced the defendant in 78-68. Section 5—8—4(b) of the Unified Code of Corrections governs the issue relating to the propriety of such sentence. This act provides:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record." Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b).

In the case before us, the trial court took into consideration the two extortion attempts by the defendant, within the space of a week. Both involved intimidation by threat of exploding a number of bombs in large commercial establishments. In addition, the record reveals that the defendant had a lengthy history of violent crime in California, both on the street and in prisons. We, therefore, find no abuse of discretion in the trial court's decision in case No. 78-68 to impose consecutive sentences to those imposed in case No. 77-393. No change with respect thereto is warranted by reason of our direction as to vacation of the intimidation convictions.

The convictions of robbery in both cases, and sentences, are affirmed, but as to the convictions and sentences for intimidation, this cause is remanded to the Circuit Court of Kankakee County with directions to vacate the sentences and convictions in both cases as to intimidation, if convictions and sentences for robbery stand. The order of the trial court directing that the sentence for robbery in case 78-68 be served consecutively to the sentence for robbery in case 77-393 is likewise affirmed.

Affirmed in part and remanded in part, with directions.

SCOTT, P. J., and STENGEL, J., concur.